# IN THE UNITED STATES DISTRICT COURT FOR THE EASTERN DISTRICT OF OKLAHOMA

JESSICA M. PARKER,        )
                                   )
           Petitioner,     )
                                   )
v.                               )        **Case No. CIV 14-146-RAW-KEW**
                                 )
**DEBBIE ALDRIDGE, Warden,**   )
                                 )
           Respondent.   )

## OPINION AND ORDER

Petitioner, a pro se prisoner currently incarcerated at Mabel Bassett Correctional Center in McLoud, Oklahoma, has filed a petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging her conviction and 50-year sentence in LeFlore County District Court Case No. CF-2010-123 for Child Abuse by Neglect (Dkt. 1). In response to the Court's Order (Dkt. 7), Petitioner requested dismissal of the unexhausted habeas corpus claim presented in Ground I of the petition (Dkt. 8). Two grounds for habeas relief remain: improper propensity evidence (Ground II) and cumulative error (Ground III). The following records have been submitted to the court for consideration in this matter:

    A.     Petitioner's direct appeal brief.

    B.     The State's brief in Petitioner's direct appeal.

    C.     Summary Opinion affirming Petitioner's judgment and sentence. *Parker v. State*, No. F-2011-808 (Okla. Crim. App. Mar. 20, 2013).

    D.     Transcripts and state court record.

**Standard of Review**

Under the Anti-Terrorism and Effective Death Penalty Act, federal habeas corpus relief is proper only when the state court adjudication of a claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by

the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

**Facts**

On March 29, 2010, Petitioner brought her five-year-old son C.J. to a health care clinic in Heavener, Oklahoma (Tr. 284-85) (Dkt. 11-2). Melinda Scantling, an advanced practice nurse, examined C.J. (Tr. 286-87).

Petitioner told Scantling that C.J. had fallen into a tub of hot bath water earlier that day, but as the examination continued, Petitioner said C.J.'s injuries had occurred the previous day (Tr. 286). Scantling observed burns on C.J.'s chest, trunk, genitals, buttocks, and lower back of his left leg, and he was missing skin in portions of the burned areas (Tr. 287-89). Scantling started two large-bore IVs, gave him oxygen, and instructed her assistant to call for an ambulance to take him to a hospital (Tr. 288-89). Petitioner became upset and stated she was afraid she would lose her children if C.J. were taken to the hospital (Tr. 293).

Paramedic David Grovdahl responded to the dispatch for an ambulance (Tr. 318-19). When he saw C.J., he thought the burns were the worst he had ever seen in his career and that a LifeFlight helicopter was needed to transport C.J. directly to the burn center in Tulsa (Tr. 320-21, 325). Grovdahl observed C.J.'s altered mental status and unresponsiveness (Tr. 320-21). When Grovdahl placed C.J. on the stretcher to move him to the helicopter, he noticed that the sheets underneath C.J. were soaked, because C.J. had no skin on a large portion of his body and the IV fluids were leaking where the skin was gone (Tr. 323).

Dr. Debra Lowen, a pediatrician with OU Tulsa who is board-certified in child abuse pediatrics, consulted with C.J.'s physician at the burn center, and she examined C.J. (Tr. 334-

35, 338-40). She also reviewed photographs of C.J. taken by Dr. Kunkel, the burn surgeon (Tr. 339-40). Dr. Lowen testified that C.J. was critically ill when admitted to the hospital (Tr. 355). In addition to the burns, three very dangerous strains of bacteria were growing in his bloodstream (Tr. 350). Such infections take time to develop, and a delay in treatment increases the likelihood of infection (Tr. 350-51).

In Dr. Lowen's opinion, C.J. was a victim of child abuse (Tr. 352). His injuries suggested he had been held in a flex position, bent at the waist and placed in hot water (Tr. 348-49). He had third-degree burns on his buttocks, genitals, and his abdomen (Tr. 349). Dr. Lowen further testified that after such burns are sustained, the patient would have been screaming because of the severe pain. (Tr. 352-53). He eventually may have calmed down enough to stop screaming, but would have become more and more lethargic, not wanting to interact or move, in an attempt to minimize the pain (Tr. 352-53).

## Ground II: Propensity Evidence

Petitioner alleges she is entitled to habeas corpus relief, because the jury was improperly exposed to propensity evidence. Respondent alleges this issue is a matter of state law which is not cognizable in federal habeas review. The Tenth Circuit Court of Appeals has held that:

> As a general matter, federal habeas corpus relief does not lie to review state law questions about the admissibility of evidence, *see Estelle v. McGuire*, 502 U.S. 62, 67-68 (1991), and federal courts may not interfere with state evidentiary rulings unless the rulings in question rendered "the trial so fundamentally unfair as to constitute a denial of federal constitutional rights," *Tucker v. Makowski*, 883 F.2d 877, 881 (10th Cir. 1989) (quotations and citations omitted).

*Moore v. Marr*, 254 F.3d 1235, 1246 (10th Cir.), *cert. denied*, 534 U.S. 1068 (2001).

### Melinda Scantling's Testimony

Petitioner alleges the testimony by Melinda Scantling, the clinic nurse, exposed the

jury to improper information about Petitioner's probationary status. Scantling testified that after she examined C.J., she directed one of her clinic employees to call an ambulance for him and told Petitioner that an ambulance had been called. Petitioner became upset upon learning that C.J. would be taken to the nearest hospital and told Scantling she did not want C.J. to go there, because she "had already been on probation" (Tr. 289) (Dkt. 11-2). Defense counsel objected, and the trial court sustained the objection and admonished the jury to disregard Scantling's statement (Tr. 290-93). Scantling then testified that Petitioner was afraid of losing her children if C.J. was taken to Poteau Hospital (Tr. 293).

The Oklahoma Court of Criminal Appeals found no error in this claim:

> We find . . . that no propensity evidence was improperly admitted. When a witness testified regarding Parker's statement to her about "probation," Parker's objection was sustained and the jury admonished. This cured any error. *Head v. State*, 146 P.3d 1141, 1148 (Okla. Crim. App. 2006).

*Parker v. State*, No. F-2011-808, slip op. at 2 (Okla. Crim. App. Mar. 20, 2013) (Dkt. 10-3).

Under Oklahoma law, when the trial court sustains a defendant's objection to testimony and admonishes the jury to disregard it, any error is cured. *Garrison v. State*, 103 P.3d 590, 608 (Okla. Crim. App. 2004). Further, federal courts "normally presume that a jury will follow an instruction to disregard inadmissible evidence inadvertently presented to it, unless there is an overwhelming probability that the jury will be unable to follow the court's instructions, and a strong likelihood that the effect of the evidence would be devastating to the defendant." *Greer v. Miller*, 483 U.S. 756, 766 n.8 (1987) (internal citations omitted).

Here, the Court finds any error in Scantling's testimony was cured, and Petitioner's trial was not rendered fundamentally unfair by the action taken with regard to this evidence. The Court further finds the OCCA's determination of this claim was not contrary to, or an unreasonable application of, clearly established Supreme Court law. *See* 28 U.S.C. §

2254(d).  This ground for habeas relief fails.

**Audiotape Recording**

Petitioner also alleges that in a portion of State's Exhibit 11, an audiotape of Petitioner's first interview by Travis Saulsberry, Petitioner asked Saulsberry, "Were you on my last charge?" (Tr. 473-74).  When the recording initially was played for the jury, the trial court ordered the tape stopped and expressed concern that its content was inaudible. *Id.*  The prosecutor stated she could not hear Petitioner's question, and defense counsel made no objection. *Id.*  The court excused the jury, and the prosecutor and defense counsel agreed to redact the portion of the exhibit containing Petitioner's question (Tr. 473-74, 482).  The redacted tape then was played for the jury and admitted into evidence (Tr. 486).  The OCCA denied relief on this claim:

> There was no plain error when an interview tape was played in which Parker briefly referred to her "last charge."  This portion of the tape was largely inaudible, the trial court stopped the proceedings, the jury was told there were problems, and the improper reference was redacted before the tape was played again.  The record shows it is unlikely jurors heard this comment.  If they did, the fleeting comment, at most, suggested another crime.  This does not rise to the level of other crimes or propensity evidence. *Neloms v. State*, 274 P.3d 161, 166-67 (Okla. Crim. App. 2012); *Bear v. State*, 762 P.2d 950, 956 (Okla. Crim. App. 1988).

*Parker*, No. F-2011-808, slip op. at 2 (Dkt. 10-3).

Based upon the record, including the fact that defense counsel said nothing about the question when the trial court stopped the tape, this Court finds is was unlikely the jury heard the question.  Although there was no admonishment, the trial court stopped the tape and facilitated redaction of the portion at issue.  Then, the redacted tape was played for the jury and admitted into evidence (Tr. 486).

This Court further finds that even if the jury heard Petitioner's question when the tape first was played, the mere suggestion that a defendant may have committed other crimes is

not improper under Oklahoma law. *See Neloms*, 274 P.3d at 166-67 (holding that defendant's statement that he had been "locked up before" was not improper evidence of any former felony conviction). *See also Bear v. State*, 762 P.2d 950, 956 (Okla. Crim. App. 1988 (holding the mere suggestion of commission of another crime, without more, does not implicate the prohibition against other crimes evidence, and if the implication of another crime is apparent only to defense counsel, the other crimes prohibition does not come into play).

Based on the record, this Court finds the OCCA's determination of this claim was not contrary to, or an unreasonable application of, federal law. Ground II of the petition is denied.

## Ground III: Cumulative Error

Petitioner alleges in Ground III that the accumulation of error in her trial warrants a new trial or sentence modification. The OCCA denied relief on this claim as follows:

> We find . . . that cumulative error does not require relief. . . . [W]e found one error was cured when Parker's objection was sustained and the jury admonished not to consider the testimony; we found another statement did not rise to the level of plain error. There is no cumulative error. *Bell v. State*, 172 P.3d 622, 627 (Okla. Crim. App. 2007).

*Parker*, slip op. at 3.

"Cumulative-error analysis applies where there are two or more actual errors. It does not apply, however, to the cumulative effect of non-errors." *Hoxsie v. Kerby*, 108 F.3d 1239, 1245 (10th Cir.) (citing *United States v. Rivera*, 900 F.2d 1462, 1471 (10th Cir. 1990) *cert. denied*, 522 U.S. 844 (1997)). *See also Castro v. Ward*, 138 F.3d 810, 832-33 (10th Cir.), *cert. denied*, 525 U.S. 971 (1998); *Le v. Mullin*, 311 F.3d 1002, 1023 (10th Cir. 2002), *cert. denied*, 540 U.S. 833 (2003) ("When reviewing a case for cumulative error, only actual errors are considered in determining whether the defendant's right to a fair trial was

violated.").

As discussed above, the OCCA found one error was cured by a jury admonishment, and the other statement did not constitute other crimes or propensity evidence. Therefore, there is no cumulative error, and the OCCA's determination of this claim was consistent with federal law. Ground III of the petition is meritless.

**Certificate of Appealability**

The court further finds Petitioner has failed to make a "substantial showing of the denial of a constitutional right," as required by 28 U.S.C. § 2253(c)(2). In addition, she has not "demonstrate[d] that reasonable jurists would find [this] court's assessment of the constitutional claims debatable or wrong." *Slack v. McDaniel*, 529 U.S. 473, 484 (2000). Therefore, Petitioner should be denied a certificate of appealability.

**ACCORDINGLY,** Petitioner's petition for a writ of habeas corpus (Dkt. 1) is DENIED, and she is denied a certificate of appealability.

**IT IS SO ORDERED** this 22nd day of June 2017.

**Dated this 22ⁿᵈ day of June, 2017.**

Ronald A. White
United States District Judge
Eastern District of Oklahoma